UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FREDERICK MORRIS,

        Plaintiff,

v.

ROBERT CROMPTON et al.,

        Defendants.

_____/

Case No. 1:23-cv-1337

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner. In a separate order, Plaintiff has been granted leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues Prison Doctor Robert Crompton, Health Unit Manager Registered Nurse Nikki Monroe, and Health Service Supervisor Jack Bellinger.

Plaintiff's complaint is organized into five separate "issues." In "Issue I," Plaintiff describes that Defendant Crompton prescribed Plaintiff doxycycline twice daily from March 15, 2022, until November 3, 2023. (ECF No. 1, PageID.3.) Plaintiff claims that taking doxycycline for this extended time compromised Plaintiff's immune system and caused him to experience nausea, vomiting, diarrhea, and delirium. (*Id.*) Non-party Physician's Assistant Amanda Mattison Serio discontinued Plaintiff's prescription for doxycycline and told Plaintiff that he had been on the medication for "way too long." (*Id.*) When Plaintiff was later seen by Defendant Crompton, Defendant Crompton told Plaintiff that "it should work its way out." (*Id.*)

"Issue II" alleges deliberate indifference on the part of Defendants Monroe and Bellinger. (*Id.*) Plaintiff describes that both Defendants showed a "lack of concern to procure a replacement CPAP headgear mask and hose" after Plaintiff's had been lost for three months. (*Id.*) Plaintiff claims that, as a result, he was forced to use a "bad mask and hose," and "recycled this harmful bacteria for months," causing diarrhea, vomiting, nausea, delirium, and loss of sleep. (*Id.*, PageID.3–4.)

In "Issue III," Plaintiff alleges that unidentified healthcare personnel refused to provide Plaintiff with antibacterial soap to keep his CPAP mask and hose clean, and that this "further perciptated [sic] [Plaintiff's] sickness by buildup of bacteria in [Plaintiff's] bad soiled mask and hose." (*Id.*, PageID.4.)

In "Issue IV," Plaintiff claims that unidentified persons delayed medical treatment for a knee injury that Plaintiff suffered as a "result of autointoxication sickness."[1] (*Id.*)

Finally, in "Issue V," Plaintiff claims that Defendants each discriminated against Plaintiff "because of the absence of auxiliary aids and services." (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise claims under the Eighth Amendment, the Americans with Disabilities Act (ADA), and the Rehabilitation Act of 1973 (RA). Plaintiff seeks damages and injunctive relief. (*Id.*)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

---

[1] In "Issue II," Plaintiff also references injuring his knee. Specifically, Plaintiff alleges that the "air full of recycled bacteria" from his CPAP machine "kept [him] sick and delirious to the point that [Plaintiff] fell in the presence of [non-party correctional officer] Night . . . injur[]ing [Plaintiff's] left knee." (ECF No. 1, PageID.4.) Plaintiff claims that "[he] was given no appointment to see [the doctor] for this injury." (*Id.*)

3

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

      A.      **42 U.S.C. § 1983: Eighth Amendment Deliberate Indifference**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff contends that Defendants Crompton, Monroe, and Bellinger, and unidentified "health care personnel" were deliberately indifferent in treating Plaintiff's medical condition, in violation of Plaintiff's Eighth Amendment rights.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component,

the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardeman Cty., Tenn.*, __ F.4th __, 2024 WL 656912, *5–6 (6th Cir. Feb. 16, 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can

be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate

6

medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *SeeMiller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

          1.    **Defendant Crompton**

Plaintiff alleges that Defendant Crompton prescribed Plaintiff doxycycline for an extended period of time and that, as a result, Plaintiff experienced nausea, vomiting, diarrhea, and delirium for an unidentified period of time. (ECF No. 1, PageID.3.) Even taking Plaintiff's allegations as true, it is not at all clear that Plaintiff has alleged sufficient facts to satisfy the objective component of the relevant two-prong test. Nonetheless, the Court will also address the subjective component.

Plaintiff does not allege that there was anything inappropriate about Defendant Crompton's original prescription for doxycycline, only that it was prescribed for "way too long" without adequate oversight. (ECF No. 1, PageID.3.) Although Plaintiff alleges that Defendant Crompton "knew or should have known that prolong[ed] use of doxycycline without per[io]dical examination

7

could and would cause autointoxication," (*id.*) this is nothing more than a conclusory allegation. The Court must accept Plaintiff's well-pleaded facts as true, but it is not required to accept conclusory allegations and vague assertions of wrongdoing. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Stripped down to its facts, Plaintiff's complaint fails to allege *facts* that would plausibly suggest that Defendant Crompton was subjectively aware that providing Plaintiff with a prescription for doxycycline from March 15, 2022, through November 3, 2023, would result in any serious medical condition.

Furthermore, "the prescribing of drugs by a physician[, or other medical provider,] which causes side effects does not constitute deliberate indifference." *Mason v. Eddy*, No. 1:18-cv-2968, 2019 WL 3766804, at *11 (N.D. Ohio Aug. 9, 2019) (citations omitted); *see, e.g.*, *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394, at *7 (W.D. Mich. Mar. 5, 2009) (discussing that "medication adjustments involve the doctor's medical judgment regarding plaintiff's treatment," and a plaintiff's "disagreement with the health care providers regarding his diagnosis and treatment does not rise to the level of a federal constitutional violation" (citations omitted)); *Christensen v. United States*, No. 5:11-321-KKC, 2013 WL 4521040, at *4 (E.D. Ky. Aug. 26, 2013) (discussing that the doctor's "decision to continue [the inmate's] prescription for [the medication that caused side effects] was evidently based upon her medical judgment that its benefits to his long-term cardiac health outweighed its detrimental side effects"). At most, Plaintiff's factual allegations suggest that Defendant Crompton acted negligently by prescribing the medication, but an Eighth Amendment violation requires a "state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.

Moreover, besides alleging that Defendant Crompton was the medical provider who initially prescribed the medication, Plaintiff fails to allege any facts showing that Defendant Crompton was aware of the subsequent sides effects that Plaintiff had from the medication. (*See generally* Compl., ECF No. 1.) Under these circumstances, there are no facts in the complaint from which to reasonably infer that Defendant Crompton was aware of a substantial risk of serious harm to Plaintiff. *See Farmer*, 511 U.S. at 835.

Accordingly, for these reasons, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Crompton.

### 2. Defendants Monroe and Bellinger

Plaintiff claims that Defendants Monroe and Bellinger showed a "lack of concern to procure a replacement CPAP headgear mask and hose" after Plaintiff lost his mask and hose. (ECF No. 1, PageID.3.) Plaintiff alleges that he was able to obtain a replacement mask and hose that Plaintiff describes only as "bad." (*Id.*, PageID.4.) Notably absent from Plaintiff's complaint are any facts that would plausibly suggest that Defendants Monroe and Bellinger were personally aware that Plaintiff had been without a mask and hose for any period of time or that the mask and hose that Plaintiff was using would cause Plaintiff to suffer a sufficiently serious medical condition.

A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Here, Plaintiff's conclusory allegation that Defendants Monroe and Bellinger showed a "lack of concern" does not rise to the level of Eighth Amendment deliberate indifference. Specifically, although Plaintiff makes this conclusory assertion about Defendants Monroe and Bellinger's "lack of concern," Plaintiff fails to allege any *facts* about their involvement in matter. For example, Plaintiff fails to allege facts suggesting that Defendants Monroe and Bellinger were

9

involved in the procurement and issuance of replacement CPAP parts to Plaintiff, and he fails to allege that they were aware that the hose and mask of Plaintiff's machine was "bad." Without facts alleged about Defendants Monroe and Bellinger's involvement in, and awareness of, the matter, Plaintiff necessarily fails to show that Defendants Monroe and Bellinger were aware of a substantial risk of harm to Plaintiff, let alone that they knew of this risk and disregarded it.

Accordingly, Plaintiff's claims against Defendants Monroe and Bellinger will be dismissed.

### 3. Healthcare Personnel

Plaintiff alleges that "health care personnel" refused to provide Plaintiff with antibacterial soap to clean his CPAP mask and hose. (ECF No. 1, PageID.4.) Further, Plaintiff claims that unidentified persons delayed medical treatment for a knee injury that Plaintiff suffered as a "result of autointoxication sickness," and that "[he] was given no appointment to see [the doctor] for [his knee] injury." (*Id.*) However, Plaintiff does not identify any individual health care provider he claims is liable for these alleged violations.

Plaintiff is obligated to plead sufficient facts that would give each defendant fair notice of Plaintiff's claims and the grounds upon which they rest. *Twombly*, 550 U.S. at 555. This requires that Plaintiff "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman*, 529 F.3d at 684. Plaintiff's general reference to "health care personnel" is insufficient to state a claim for relief against any named Defendant or any presently unknown individual. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable" for the events described in the complaint.") The Court will therefore dismiss Plaintiff's claims against "health care personnel."

Moreover, even if Plaintiff had identified individual healthcare providers with respect to his claim regarding antibacterial soap, Plaintiff has failed to allege sufficient facts that would plausibly suggest that any individual provider would have been subjectively aware that the refusal to provide Plaintiff with antibacterial soap would have subjected Plaintiff to a sufficiently serious medical condition. For this reason as well, Plaintiff fails to state a legally cognizable Eighth Amendment claim.

### B. Americans with Disabilities Act and Rehabilitation Act: Discrimination

In "Issue V," Plaintiff claims that Defendants' actions were the result of unlawful discrimination against an individual with a disability, which the Court construes as a claim for violation of the ADA—presumably Title II of the ADA, 42 U.S.C. §§ 12131—and the RA—presumably § 504 of the RA, 29 U.S.C. § 794(a). Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).

Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)).

11

In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). And, the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted). The proper defendant in a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named Defendants Crompton, Monroe, and Bellinger as defendants in both their individual and official capacities.

Plaintiff includes only a conclusory allegation of discrimination. Plaintiff's complaint is devoid of facts that would indicate that Plaintiff is disabled within the meaning of the law, or that Defendant Crompton prescribed Plaintiff with doxycycline for an extended period or Defendants Monroe and Bellinger showed a "lack of concern" *because of* an unidentified disability. In sum, Plaintiff's complaint contains no facts that would allow the Court to infer discrimination. Plaintiff

instead appears to ask this Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that Defendants violated the ADA and the RA. *See Iqbal*, 556 U.S. at 679. Plaintiff has not met his initial burden. His claims of discrimination against Defendants will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's federal claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   March 14, 2024                        /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge